UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------
ARNOLD SHAVUO,

                    Plaintiff,

         - against -                          1:10 C 2914 (MEA)
                                              MEMORANDUM OPINION
                                              AND ORDER

ERIC K. SHINSEKI,

                    Defendant.
--------------------------------------------------------------

**MARVIN E. ASPEN**, United States District Judge:

           Presently before us is the Government's first motion in limine in this employment case.

The Government contends that, as a matter of law, Plaintiff Arnold Shavuo cannot obtain back

pay or front pay on his remaining claim for reasonable accommodation under the Rehabilitation

Act.[1]  As such, the Government objects to the introduction of any evidence of the circumstances

of Shavuo's termination from the Department of Veterans Affairs ("VA") and related damages.

For the reasons set forth below, the motion is granted in part and denied in part.

                                      **BACKGROUND**

           We assume familiarity with the underlying factual background and procedural history,

which will be discussed in greater detail only as needed.  Briefly, however, Shavuo filed suit in

2010 alleging numerous causes of action for violations of the Rehabilitation Act, the Family and

Medical Leave Act, the Federal Employees Family Friendly Leave Act, and Title VII.  On

February 11, 2013, Judge Cathy Seibel ruled on the Government's motion for summary

---

[1] In the pretrial order, Shavuo requests back pay and front pay from the date of his
termination through his retirement date, totaling $578,247.36.  (JPTO, Section J, at 15.)

judgment, dismissing all claims but Shavuo's claims for reasonable accommodation under the Rehabilitation Act.  (Barnea 3/22/13 Decl., Ex. A., 2/11/13 Hrg. Tr. at 17–18.)

Shavuo worked as a pipefitter in a plumbing shop at the VA Hospital in Castle Point until his termination in September 2009.  (*Id.* at 6.)  Shavuo shared a contentious working relationship with a co-worker, Dominic Bagala, who was promoted to supervisor in the plumbing shop as of March 2009.  (*Id.*)  On March 13, 2009, Shavuo requested a transfer from the plumbing shop due to his hostilities with Bagala.  A few weeks later, Shavuo formally requested a permanent reasonable accommodation because directly reporting to Bagala exacerbated Shavuo's depression and post-traumatic stress disorder ("PTSD").  (*Id.* at 6–11.)  Shavuo contends that the VA ultimately failed to accommodate that documented request, which directly resulted in his termination shortly thereafter due to an altercation in a meeting with Bagala.

## STANDARD OF REVIEW

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*."  *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176–77 (S.D.N.Y. 2008) (*citing Luce v. Unites States*, 469 U.S. 38, 41 n.4, 105 S. Ct. 460, 463 (1984)).  "The purpose of an *in limine* motion is to aid the trial process by enabling the [c]ourt to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial."  *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal quotation omitted); *see also Ventura Assocs., Inc. v. Int'l Outsourcing Servs., Inc.*, No. 04 C 5962 & 04 C 10250, 2009 WL 691066, at *1 (S.D.N.Y. Mar. 17, 2009).

**ANALYSIS**

The Government's motion raises very basic questions about the scope of Shavuo's claims and the upcoming trial, beyond mere disputes about evidentiary details.  Indeed, the Government contends that Shavuo failed to raise one of his primary arguments as a viable theory for either the VA's liability or equitable damages.  Accordingly, before we address any evidentiary matters, we must tackle the threshold question: did Shavuo allege a disparate treatment claim under the Rehabilitation Act based on his termination?  If so, he is entitled to present evidence concerning his termination to the jury and, if he prevails at trial, may request equitable relief.

## I.    Disparate Treatment Claim

As the Government points out in its memorandum, claims under the Rehabilitation Act[2] may take several forms.  Under the statute, discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."  *McBride v. BIC Consumer Prods. Manuf. Co.*, 583 F.3d 92, 96 (2d Cir. 2009) (quoting 42 U.S.C. § 12112(b)(5)(A)); *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 216 (2d Cir. 2001).  To prevail on a claim for failure to accommodate, the plaintiff must prove that: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."  *McMillan v. City of N.Y.*, No. 11-3932, 2013 WL 779742, at *4

---

[2] The Rehabilitation Act utilizes the substantive standards of the Americans with Disabilities Act ("ADA") and provides that federal employers may not "discriminate against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees, . . . and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a); *see* 29 U.S.C. § 791(g).

(2d Cir. Mar. 4, 2013) (quoting *McBride*, 583 F.3d at 97).  The parties do not dispute that Shavuo maintains a claim against the VA for failure to provide a reasonable accommodation.  Although the Government sought summary judgment on this claim, Judge Seibel denied the motion in light of numerous factual questions about the VA's role in the interactive process and the reasonableness of its proposed accommodation.  (2/11/13 Hrg. Tr. at 5–11.)  Those questions remain pending for the jury to determine at trial.

Plaintiffs may also pursue disparate treatment claims under the Rehabilitation Act, where they allege to have suffered adverse employment actions, such as termination, because of a disability.  *See* 42 U.S.C. § 12112(b)(4).  To succeed on this type of claim, a plaintiff must show that: "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability."  *McMillan*, 2013 WL 779742, at *3 (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)).  Here, the Government contends that Shavuo never alleged a disparate treatment disability claim and, thus, he cannot now contest his termination[3] or request equitable relief.

Shavuo argues that he did in fact allege a disability claim based on his termination,[4]

---

[3] Judge Seibel dismissed Shavuo's other termination and retaliation claims brought under Title VII and the Rehabilitation Act.

[4] Shavuo tends to describe this claim (both here and in his jury instructions) as a "hostile work environment" claim.  (*See* Opp'n Gov't MIL 1 at 4.)  This characterization is inappropriate and misleading, and we see no such claim on the record before us.  Although Shavuo previously alleged a racially hostile environment in violation of Title VII, Judge Seibel dismissed that claim.  (2/11/13 Hrg. Tr. at 11.)  Shavuo plainly felt his work environment was hostile and bad for his health, but we need not use this specific term as it carries its own legal connotations.

-4-

which the Government simply failed to challenge in its summary judgment motion.[5]  (Opp'n Gov't MIL 1 at 2–3.)  After our independent review of the complaint, we agree that Shavuo adequately asserted a cause of action for discriminatory discharge based on the VA's alleged failure to accommodate him by removing him from Bagala's supervision.  He alleges, for example, that he suffers from psychiatric disorders, that he performed his duties in a satisfactory manner, that the VA violated the Rehabilitation Act by failing to accommodate him, and that "[b]ut for the discriminatory and unlawful actions of the [VA], . . . [Shavuo] would not have been terminated from employment with the resulting loss of wages and benefits."  (Compl. at ¶¶ 30, 69, 102, 104.)  Shavuo also alleges that, upon learning of Bagala's impending promotion, he expressed his concern that Bagala would try to get Shavuo terminated.  (*Id.* ¶ 79.)  He claims that Bagala "was intent on creating an intolerable situation" and that the VA's failure to accommodate Shavuo enabled Bagala to continue harassing him and looking for excuses to fire him.  (*Id.* ¶ 89.)  Shavuo further alleges that, as he feared and expected, Bagala reported Shavuo for insubordinate conduct, resulting in his termination.  (*Id.* ¶ 92.)

---

[5] We understand the Government's oversight in this situation, given that Shavuo's complaint is not exactly a model of clarity.  Judge Seibel similarly commented that it was difficult to unravel and analyze Shavuo's claims at the summary judgment stage because multiple claims are included in each section of the complaint.  (2/11/13 Hrg. Tr. at 2–3; *see also* Compl. ¶¶ 68–104 (describing at least five causes of action without explicit differentiation).)  Nonetheless, Shavuo alleged all of the necessary elements of this claim, which remains untouched by the summary judgment motion and ruling.

Relatedly, while we do not condone the Government's use of a motion in limine to raise an argument more appropriate for a Rule 12 or Rule 56 motion, we will resolve this critical question in the interest of efficiency given the pending trial.  *Green Earth Int'l Franchising Corp. v. Milks Dev.*, 311 F. Supp. 2d 419, 424 (S.D.N.Y. 2004) ("While dismissing claims is not the prototypical purpose of a motion in limine, such motions have sometimes been addressed on the merits. . . ") (internal quotions omitted); *Fournier v. Erickson*, 242 F. Supp. 318, 334–36 (S.D.N.Y. 2003) (addressing motion for purposes of efficiency).

Neither the Government's motion for summary judgment, nor Shavuo's opposition, directly addressed this discharge claim. Although the claim appears to have slipped under the radar for purposes of that motion, we cannot hold that Shavuo abandoned it. He may not have articulated or differentiated the claim specifically at that point, which surely would have been advisable, but he had no obligation to defend it if it was not squarely challenged. *See, e.g.*, *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."); *Douglas v. Victor Capital Group*, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998) (failure to respond to summary judgment motion that contested claims specifically resulted in abandonment of those particular, undefended claims). Regardless, in his opposition, Shavuo argued that "[b]ut for the failure of the [VA] to provide [him] with a reasonable accommodation, the incident with Bagala would not have occurred and [he] would not have suffered a loss of employment." (Opp'n MSJ at 29.) We find this theory entirely consistent with the allegations of the complaint. While the parties previously neglected to address this claim, either as a pleading matter or on the merits, foreclosing it altogether would be unfair.

The parties apparently do not dispute the first three elements of this discharge claim. (JPTO, Section F ¶¶ 1–3.) Accordingly, Shavuo's success hinges on his ability to prove the fourth element: that the VA terminated him *because of* his disability. The Government contends that Shavuo could never succeed with that showing because, as Judge Seibel previously held, the VA had a legitimate, non-discriminatory reason for discharging Shavuo—his insubordination while subject to a Last Chance Agreement. (Gov't MIL 1 Mem. at 18; 2/11/13 Hrg. Tr. at

13–17.)  According to the Government, Shavuo cannot move forward with this claim because he

cannot rebut that rationale and demonstrate pretext.  (Gov't MIL 1 Mem. at 18.)

This argument overlooks Second Circuit authority stating that pretext is not necessarily

an issue for this specific type of claim.  As the Second Circuit recently explained:

> When the reason given by the employer for the adverse employment action is
> unrelated to the employee's disability, the *McDonnell Douglas* approach can be used
> to weed out non-viable claims of discrimination based on circumstantial evidence.
> When the parties agree that the employer complains of conduct that is the direct
> result of the employee's disability, however, there is no need to evaluate whether the
> employer's adverse employment action made in response to that conduct is
> pretextual.

*McMillan*, 2013 WL 779742, at *7 (citing *Teahan v. Metro-N. Commuter R.R. Co.*, 951 F.2d

511, 514 (2d Cir. 1991)); *see Borkowski v. Valley Central Sch. Dist.*, 63 F.3d 131, 143 (2d Cir.

1995) ("Failure to consider the possibility of reasonable accommodation for such disabilities, if it

leads to discharge for performance inadequacies resulting from the disabilities, amounts to a

discharge solely because of the disabilities.")  In applying this reasoning, the Second Circuit in

*McMillan* found that the plaintiff, who suffered side effects from his schizophrenia medication,

"was tardy because of his disability[,] . . . was disciplined because of his tardiness," and thus

"was disciplined because of his disability."  2013 WL 779742, at *7 (eliminating pretext

requirement where plaintiff was often late to work because his medication left him sluggish in

the morning).  There, pretext was not an issue, and the case turned on whether the plaintiff could

show he was qualified.  *Id.*

Here, the parties do not dispute Shavuo's qualifications but disagree as to the cause of his

termination.  Shavuo claims that the VA's failure to accommodate his psychiatric disorders by

putting some distance between him and Bagala led to the altercation between them and caused

his termination. To succeed, Shavuo must establish a direct causal connection between his depression and PTSD and the circumstances of his discharge. Analogizing to *McMillan*, Shavuo could connect those dots by convincing the jury that he was prone to insubordination (or some similar characterization of his performance inadequacies) because of his disability and was punished for resulting, related inadequacies (here, his misconduct).[6] If he supports that theory with sufficient evidence, he may be able to prove the "but-for" connection necessary for a favorable verdict. Depending on the adequacy of the evidence, however, the jury may be entitled to conclude, as did Judge Seibel on the separate termination claims, that Shavuo's outburst constituted a legitimate, non-discriminatory reason for the VA's decision to fire him.

## II.    Consequential Evidentiary Rulings

Based on this holding, we will allow the parties to present evidence about Shavuo's termination and its alleged causes, to the limited extent necessary. We turn now to address specific evidentiary issues. Because an order on a motion in limine is "subject to change as the case unfolds," these rulings constitute preliminary determinations in preparation for trial. *Palmieri*, 88 F.3d at 139 (*quoting Luce*, 469 U.S. at 41, 105 S. Ct. at 163).

### A.    Disciplinary History

In its motion, the Government expresses concern that evidence of Shavuo's lengthy disciplinary history and termination could confuse the jury and unnecessarily prolong the trial.

---

[6] We stress that, pursuant to these Second Circuit authorities, it likely would not be sufficient for Shavuo to contend that the VA caused his termination solely because its failure to accommodate forced him to be present in a meeting or otherwise have direct contact with Bagala. Shavuo must directly relate his disability to his misconduct that led to his termination. *See Borkowski*, 63 F.3d at 143 (stressing that liability arises only where a plaintiff is "discharged for performance inadequacies resulting from the disabilities").

The Government also argues that Shavuo should not be permitted to challenge the VA's imposition of discipline as unwarranted.  (Gov't MIL 1 Mem. at 23 & n.8.)  Shavuo concedes the point, agreeing that "such material and related testimony should be barred."  (Opp'n Gov't MIL 1 at 6.)  We concur, as Shavuo's history of discipline—predominantly based on tardiness—is irrelevant to the remaining claims.[7]

Shavuo is correct, however, that some evidence touching on prior discipline may be necessary at trial.  (*Id.*)  For example, as he points out, he may need to use certain exhibits—he proposes Defendant's Exhibits Q and R—to show that the VA knew about his morning time constraints and thus knew he would be unable to comply with its proposed accommodation that he work at the Montrose location.  Defendant's Exhibits R (the pertinent Last Chance Agreement) and T (the removal letter) would also provide basic context for Shavuo's termination.  The motion is therefore denied as to these three exhibits.  We encourage the parties to discuss whether they can stipulate to certain facts to eliminate the need for such materials.

### B.      Back Pay / Front Pay

The Government also rightly contends, and Shavuo agrees, that the jury should not hear evidence concerning Shavuo's claims for back pay and front pay.  (Gov't MIL 1 Mem. at 20; JPTO, Section D, at 5–6.)  "Because a lost wages award—whether in the form of back pay or front pay—is an equitable remedy, a party is generally not entitled to a jury determination on the

---

[7] We cannot rule out the possibility at this juncture that Shavuo was also disciplined for conduct similar or related to that which led to his termination.  For example, the Government argues elsewhere that it should be permitted to introduce evidence of Shavuo's outbursts during meetings with a different supervisor, John Cliffe (Opp'n Pl. MIL at 2), and we will address that issue in a separate order.  The parties should consider whether any other portions of Shavuo's disciplinary history are substantively relevant to the two remaining claims and bring any additional disagreements to our attention at the pretrial conference.

question." *Broadnax v. City of New Haven*, 415 F.3d 265, 271 (2d Cir. 2005); *Hamza v. Saks Fifth Ave., Inc.*, No. 07 C 5974, 2011 WL 6187078, at *3 (S.D.N.Y. Dec. 5, 2011) (precluding the parties from presenting evidence of front or back pay to the jury). Accordingly, the motion is allowed. The parties shall not introduce to the jury any exhibits or testimony supporting or contesting Shavuo's claims for front and back pay. We will not instruct the jury on these issues, nor may the verdict sheet inquire as to such damages. If the jury finds in Shavuo's favor on liability, the court will convene a damages hearing shortly thereafter and consider whether the evidence warrants equitable relief.[8]

## CONCLUSION

The Government's first motion in limine is denied in part, and Shavuo may proceed to trial on his disparate treatment claim. The motion is further denied as to Defendant's Exhibits Q, R, and T, which may be introduced as needed for the reasons indicated above. The motion is preliminarily granted as to other evidence of Shavuo's disciplinary history based on tardiness or attendance issues and as to evidence related to the back and front pay requests. We will issue a separate order in due course addressing the Government's second motion in limine, as well as Shavuo's pending motion.

---

[8] We need not yet address the Government's argument that Shavuo could not obtain equitable relief, as a matter of law, on a reasonable accommodation claim not explicitly resulting in an adverse employment action. (Gov't MIL 1 Mem. at 14–19.) We may entertain that question later if necessary.

The parties shall review and modify their proposed jury instructions to ensure consistency with this opinion.  Revised instructions shall be filed on or by Friday, April 5, 2013.  The parties' joint statement of the case and verdict form should also reflect the rulings herein.  Finally, the parties are encouraged to enter into any additional stipulations of fact that could streamline the presentation of evidence and mitigate evidentiary disputes at trial.

SO ORDERED:

_____
Marvin E. Aspen
United States District Judge

Dated:        Chicago, Illinois
              April 3, 2013