UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------
ARNOLD SHAVUO,

                    Plaintiff,

          - against -                          1:10 C 2914 (MEA)
                                               MEMORANDUM OPINION
                                               AND ORDER

ERIC K. SHINSEKI,

                    Defendant.
-------------------------------------------------------------

**MARVIN E. ASPEN**, United States District Judge:

          Presently before us are the Government's second motion in limine and Plaintiff Arnold

Shavuo's motion in limine.  As set forth below, both motions are granted in part, and denied in

part.

                              **BACKGROUND**

          We assume familiarity with the underlying factual background and procedural history,

which will be discussed in greater detail only as needed.  Briefly, however, Shavuo filed suit in

2010 alleging numerous causes of action for violations of the Rehabilitation Act, the Family and

Medical Leave Act, the Federal Employees Family Friendly Leave Act, and Title VII.  On

February 11, 2013, Judge Cathy Seibel ruled on the Government's motion for summary

judgment, dismissing all claims but Shavuo's claims for reasonable accommodation under the

Rehabilitation Act.  (Barnea 3/22/13 Decl., Ex. A., 2/11/13 Hrg. Tr. at 17–18.)

          Shavuo worked as a pipefitter in a plumbing shop at the VA Hospital in Castle Point until

his termination in September 2009.  (*Id.* at 6.)  Shavuo shared a contentious working relationship

with a co-worker, Dominic Bagala, who was promoted to supervisor in the plumbing shop as of

March 2009.  (*Id.*)  On March 13, 2009, Shavuo requested a transfer from the plumbing shop due to his hostilities with Bagala.  A few weeks later, Shavuo formally requested a permanent reasonable accommodation because directly reporting to Bagala exacerbated Shavuo's depression and post-traumatic stress disorder ("PTSD").  (*Id.* at 6–11.)  Shavuo contends that the VA ultimately failed to accommodate that documented request, which directly resulted in his termination shortly thereafter due to an altercation in a meeting with Bagala.

## STANDARD

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*."  *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176–77 (S.D.N.Y. 2008) (*citing Luce v. Unites States*, 469 U.S. 38, 41 n.4, 105 S. Ct. 460, 463 (1984)).  "The purpose of an *in limine* motion is to aid the trial process by enabling the [c]ourt to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial."  *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal quotation omitted); *see also Ventura Assocs., Inc. v. Int'l Outsourcing Servs., Inc.*, No. 04 C 5962 & 04 C 10250, 2009 WL 691066, at *1 (S.D.N.Y. Mar. 17, 2009).  Because a ruling on a motion in limine is "subject to change as the case unfolds," this ruling constitutes a preliminary determination in preparation for trial. *Palmieri*, 88 F.3d at 139 (*quoting Luce*, 469 U.S. at 41, 105 S. Ct. at 163).

## ANALYSIS

### I.    Government's Second Motion in Limine

We begin with the Government's pending motion, which seeks to limit Shavuo's reliance on two types of evidence.

A.        **Evidence Concerning Dismissed Race Claims**

The Government asks that we preclude Shavuo from introducing any documents or testimony at trial relating to the now-dismissed claims that he suffered race discrimination and a racially hostile work environment at the hands of the VA.  The Government contends that two particular exhibits proposed by Shavuo—Exhibits 13 and 15—mention the race discrimination claims already rejected by the court.  The Government argues that any such evidence should be barred as irrelevant under Federal Rule of Evidence 401 and as unduly prejudicial under Rule 403.  (Gov't MIL 2 Mem. at 2–5.)

In response, Shavuo acknowledges the dismissal of his race-based claims and represents that he "does not intend to elicit testimony about perceived racial animosity."  (Opp'n Gov't MIL 2 at 1.)  Given this concession, we need only reiterate that no such testimony will be permitted because it would be irrelevant and inflammatory, as well as potentially confusing and misleading to the jury.

With respect to Shavuo's repeated references to a "hostile work environment," we again caution him against using this particular phrase to describe his remaining claims in front of the jury.  First, Shavuo does not have a pending "hostile work environment" claim of any kind.  Yet that term carries legal connotations, calling to mind a claim based on severe and pervasive harassment due to a protected characteristic.  Use of this term could easily confuse and mislead the jury as to the claims to be decided.  Second, as a practical matter, Shavuo need not rely on this expression to make his point.  As we construe his theory, Shavuo argues that the longstanding bad blood between him and Bagala, his related anxieties and fears about losing his job, and the VA's refusal to accommodate him despite these circumstances constituted a "hostile

work environment," which exacerbated his psychiatric disorders and inflicted further anguish. (*Id.* at 2.)  We make no comment on the merits of that theory but again stress that Shavuo can and should avoid using the term "hostile work environment" to describe it, as that term is inaccurate and confusing.  At this juncture we will not order Shavuo to take any action (i.e., redaction) with respect to proposed exhibits, but we expect him to rephrase his theme as needed, including any appropriate modifications to testimony, jury instructions, and counsel's statements to the jury.

As for Shavuo's Exhibit 13, his EEO Complaint to the VA, Shavuo has agreed to redact the reference in that document to race discrimination.  (Opp'n Gov't MIL 2 at 1; *see* Barnea 3/22/13 Decl., Ex. B-55, Shavuo's 7/7/09 Compl. of Employment Discrimination.)  Exhibit 13 is otherwise relevant to Shavuo's claims and, once redacted, may be offered.

Exhibit 15 is an email written by Kevin Konco, Shavuo's union representative, that summarizes conversations between Konco and Shavuo, as well as Konco and Bagala.  (Barnea 3/22/13 Decl., Ex. E, 8/1/08 Konco Email.)  In the email, Konco recounts that Shavuo felt Bagala was prejudiced and felt he "would have to leave the shop" if Bagala became supervisor.  (*Id.*) Konco also notes that Bagala would not ride to a meeting with Shavuo.  Konco does not mention race, indicate that he perceived discrimination, or suggest that Shavuo is alleging any particular form of discrimination.  Shavuo contends that this document is relevant to support his claim that he and Bagala shared a mutual dislike, known in their workplace.  (Opp'n Gov't MIL 2 at 1–2.) Although there may be other problems with the introduction of this document at trial, it is not irrelevant, confusing, misleading, or unduly prejudicial such that we need preclude it at this time. *See Romanelli v. Long Island R.R. Co.*, No. 11 C 2028, 2012 WL 2878132, at *1 (S.D.N.Y.

-4-

July 13, 2012) (noting that a court excludes evidence "only if it is clearly inadmissible on all potential grounds") (internal quotation omitted).

>       **B.      The Scope of Dr. Carbone's Testimony**

The Government also moves for an order marking the boundaries of permissible testimony for Shavuo's treating psychiatrist, Dr. Carbone.  (Gov't MIL 2 Mem. at 6–9.)  The Government specifically asks that we exclude any testimony from Dr. Carbone, or any other treating physician offered by Shavuo, opining that the VA's alleged failure to accommodate him caused his termination.  (*Id.* at 9.)

The parties essentially agree on the appropriate scope of testimony for such witnesses. Although treating physicians are deemed expert witnesses, they are not required to provide expert reports if they were not retained specifically for trial.  *Romanelli*, 2012 WL 2878132, at *2; *Goss v. JLG Indus., Inc.*, No. 10 C 58S, 2012 WL 268034, at *10–11 (W.D.N.Y. Jan. 30, 2012); *Spencer v. Int'l Shoppes, Inc.*, No. 06 C 2637, 2011 WL 4383046, at *2–3 (E.D.N.Y. Sept. 20, 2011).  A treating physician witness' testimony, however, is limited to facts and opinions only where "based on his/her personal knowledge from consultation, examination and treatment," rather than information derived from any outside sources.  *Spencer*, 2011 WL 4383046, at *3 (emphasis omitted); *Romanelli*, 2012 WL 2878132, at *2; *Goss*, 2012 WL 268034, at *10–11.  In other words, the doctor may offer "opinion testimony on diagnosis, treatment, prognosis and causation, but *solely* as to the information [he] has acquired through observation of the [p]laintiff in [his] role as a treating physician limited to the facts in [p]laintiff's course of treatment." *Spencer*, 2011 WL 4383046, at *3; *Williams v. Regus Mgmt. Group, LLC*, No. 10 C 8987, 2012 WL 1711378, at *3 (S.D.N.Y. May 11, 2012).  A treating physician's testimony may encompass

opinions about "causation [of the condition], severity, disability, permanency and future impairments." *Williams*, 2012 WL 1711378, at *3 (emphasis omitted); *see Goss*, 2012 WL 268034, at *11 (allowing doctor who treated plaintiff to offer his opinion about the causal relationship between the workplace accident and plaintiff's injuries). Consistent with these principles, Dr. Carbone plainly may testify about his treatment of Shavuo, including their consultations, Shavuo's symptoms, diagnosis, treatment and recommendations.

The point of contention between the parties is whether Dr. Carbone could offer testimony about the cause of Shavuo's termination. (Gov't MIL 2 Mem. at 7–9; Opp'n Gov't MIL 2 at 4, 6–7.) Shavuo argues, for example, that Dr. Carbone can testify about the relationship between the VA's failure to accommodate Shavuo and his subsequent termination. Shavuo argues that Dr. Carbone's progress notes discuss Shavuo's termination. (Opp'n Gov't MIL 2 at 6.) He also rather audaciously contends that because Dr. Carbone was employed by the VA, "his knowledge of matters relating to the VA is based upon personal knowledge." (*Id.* at 4.) This argument is unpersuasive.

Dr. Carbone may testify—to the extent based on his treatment of and consultations with Shavuo—about Shavuo's psychiatric disorders and how they affected him, including how they manifested themselves during the time he saw Shavuo. He may testify about medication or other recommendations he made to Shavuo to control his conditions. He may also testify as to whether Shavuo's working conditions affected his mental or physical health, based on his observations as a doctor. But Dr. Carbone is in no position to opine as to the VA's decision-making process or whether the VA's failure to accommodate Shavuo actually caused the scenario that led to his termination. Contrary to Shavuo's assertion, Dr. Carbone has no personal knowledge of that

incident and cannot speculate as to what occurred between Shavuo and Bagala, or why.[1]

Accordingly, the Government's motion is granted on this point: Dr. Carbone may not testify as to

whether the VA's failure to accommodate Shavuo directly caused his termination.

## II.   Shavuo's Motion in Limine

Shavuo asks that we preclude the Government from introducing various exhibits,

including the Progress Notes of Dr. Carbone from February 2, 2009, and a set of documents

showing prior discipline Shavuo received while employed at the VA.  We consider each in turn.

### A.   Disciplinary Materials

#### i.   Exhibits E through J, M and P

The first subset of documents challenged by Shavuo includes seven documents

memorializing Shavuo's history of being AWOL for numerous shifts and the resulting discipline,

including suspensions.  (Haberman 3/29/13 Affirm., Exs. E–J, M & P.)  Defendant's Exhibits E

through J, as well as Exhibit M, concern Shavuo's tardiness and attendance problems

exclusively.  As discussed in our ruling on the Government's first motion in limine, these

documents are irrelevant to the pending claims, which do not stem from Shavuo's failure to

comply with attendance policies.  Shavuo's motion is granted as to these exhibits.

Exhibit P is a letter from Robert Walton, dated April 16, 2008, informing Shavuo that

Walton has decided not to remove Shavuo from his employment.  (Haberman 3/29/13 Affirm.,

---

[1] In addition, Dr. Carbone's written comments recommending that the VA provide a reasonable accommodation do not authorize him to discuss Shavuo's termination or what caused it. (*See* Haberman 3/29/13 Affirm., Ex. 8 (Assessment of Employee/Applicant Request for a Reasonable Accommodation) (speculating that "without hostility and worsened symptoms," Shavuo "will continue to do excellent work") & Ex. 17 (3/17/09 Progress Note) (identifying as part of his treatment plan that Shavuo "would benefit from an immediate lateral transfer to another shop in order to avoid potential conflicts with the new supervisor").

Ex. P.)  According to the letter, Shavuo apparently failed to perform his duties in a workmanlike

fashion.  While Walton rescinds his earlier decision to terminate Shavuo, he notes that "any

future instances of unauthorized absence or misconduct will result in you being subject to

removal, pursuant to the terms of your Last Chance Agreement."  (*Id.*)  As Shavuo points out, the

Government has not identified Walton as a potential witness at trial, and it is unclear what the

Government seeks to do with this document.  The conduct and incident vaguely described in

Exhibit P do not sound particularly relevant to Shavuo's pending claims based on the VA's

failure to accommodate his disability.  Introduction of the document to prove simply that Shavuo

was subject to a Last Chance Agreement at that point in time may be redundant, in light of other

testimony and proposed exhibits.  Nonetheless, we cannot rule out the possibility that some

relevant use might arise for the document.  Thus, while we are inclined to preclude Exhibit P, we

withhold judgment and will make a final determination at trial if necessary.  *See Romanelli*, 2012

WL 2878132, at *1.

    ii.  *Exhibits K, L, N and O*

   In addition to challenging their relevance, Shavuo also objects to Exhibits K, L, N and O

pursuant to Rules 403 and 404(b).  Rule 403 authorizes us to "exclude relevant evidence if its

probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative

evidence."  Character evidence is precluded under Rule 404, which provides that "[e]vidence of a

crime, wrong, or other act is not admissible to prove a person's character in order to show that on

a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).

Shavuo contends that these documents—even if relevant, which he disputes—are unduly

prejudicial because they describe him as being "hostile."  (Pl. MIL at 3–5.)  He further contends

that the Government's only purpose for introducing these documents would be to argue to the

jury that because Shavuo "was disciplined in the past, he should be disciplined in the future."

(*Id.*)

Exhibits K and L are reports prepared by John Cliffe, the Chief Engineer, who describes

two separate incidents in 2007 where Shavuo's behavior was disrespectful during disciplinary

meetings.  (Haberman 3/29/13 Affirm., Exs. K–L.)  Cliffe notes in each report that Shavuo raised

his voice, used profanity, and became hostile during their sessions.  (*Id.*)  We disagree with

Shavuo and conclude that Exhibits K and L are relevant and admissible.  These documents are

directly pertinent to Shavuo's theory that the VA's failure to accommodate caused the

scenario—his insubordination to Bagala in a meeting—that resulted in his termination.  The

Government is entitled to contest that causation theory by showing that Shavuo engaged in

arguably similar conduct with a different supervisor, years before Shavuo had requested any

accommodation.

Exhibits K and L are not unduly prejudicial simply because they may undercut Shavuo's

theory.  "Evidence cannot be excluded under Fed. R. Evid. 403 on the basis that, due to its

relevance, such evidence has a negative impact on a party's litigation position."  *MBIA Ins.

Corp. v. Patriarch Partners VIII, LLC*, No. 09 C 3255, 2012 WL 2568972, at *11 (S.D.N.Y. July

3, 2012) (citing *George v. Celotex Corp.*, 914 F.2d 26, 31 (2d Cir. 1990)).  Moreover, Exhibits K

and L do not constitute impermissible character evidence.  The Government is not attempting to

show (nor could it) that Shavuo must have been disrespectful to Bagala because he was

previously disrespectful to Cliffe.  We reiterate that trial of Shavuo's discharge claim[2] will focus

---

[2] This issue could potentially become relevant to Shavuo's equitable damages theory.

not on whether he was insubordinate or hostile during a particular incident, but *why*.  Indeed,

neither of Shavuo's pending claims require him to deny or disprove his actual behavior.  We

therefore will not preclude Exhibits K and L.

      For the same reasons, we find that Exhibit N is admissible in large part.  Exhibit N is a

Proposed Removal letter dated October 31, 2007 and also issued by Cliffe.  In this letter, Cliffe

recounts Shavuo's then-recent disciplinary issues, including the two incidents of disrespectful

conduct and another incident where, according to the letter, Shavuo unreasonably delayed

completion of an assignment.  Cliffe also summarizes Shavuo's past record for being AWOL and

states that no final decision regarding the proposed termination had been made.  (Haberman

3/29/13 Affirm., Ex. N.)  Exhibit N is relevant and admissible to the same extent as Exhibits K

and L, though introduction of Exhibit N could be duplicative depending how the presentation of

evidence unfolds.  We agree with Shavuo, however, that certain paragraphs of this document are

not relevant.  Specifically, paragraph 1.II (discussing the assignment delay) and paragraph 4

(recounting discipline for unauthorized absences) are irrelevant and must be redacted if this

exhibit is offered.  The parties are encouraged to enter into any additional stipulations of fact that

could streamline the presentation of this evidence.

      Finally, Exhibit O is a Last Chance Agreement executed by Shavuo on January 15, 2008,

wherein the VA agreed not to terminate Shavuo for the above-noted incidents with Cliffe, so

long as Shavuo committed no further misconduct for two years.  We grant Shavuo's motion with

respect to this exhibit.  Introduction of Exhibit O would almost certainly be redundant and

unnecessary in light of the other exhibits and expected testimony about these incidents.  In

addition, the 2008 Last Chance Agreement is not relevant for any other obvious purpose.  The

fact that Shavuo had been placed on this 2008 Last Chance Agreement is not relevant to his

eventual termination, which occurred while Shavuo was subject to a different and superceding

Last Chance Agreement, dated February 6, 2009.  We have already allowed the parties to rely on

that document, Defendant's Exhibit R, as necessary to provide context at trial.

> **B.      February 2, 2009 Progress Notes**

In his motion, Shavuo also asks that we preclude the introduction of Defendant's

Exhibit D, Dr. Carbone's February 2, 2009 Progress Notes from a consultation with Shavuo.

Shavuo contends that we must exclude this exhibit pursuant to Rules 402 and 403 because it

contains notations about his prior history of substance abuse.

The Government counters that this document is highly probative, particularly as to

damages, because it provides a snapshot of Shavuo's mental health prior to Bagala becoming his

supervisor and prior to Shavuo's requests for a transfer or other accommodation.  (Opp'n Pl. MIL

at 6–7.)  The Government also questions the genuineness of Shavuo's concern about evidence of

his prior substance abuse, because Shavuo himself proposes using Progress Notes from other

dates with similar notations.  (*Id.* at 8; *see* 3/22/13 Barnea Decl., Ex. J (9/10/09 Progress Notes).)

We agree with both parties.  Exhibit D is relevant, as the Government contends, to

Shavuo's claim that the VA's failure to accommodate him resulted in significant damage to his

mental health (for which he seeks $300,000), as well as his termination.  On the other hand, Dr.

Carbone's notations in Exhibit D about Shavuo's history of substance abuse are irrelevant to that

point.  The notations are unnecessary for the Government to set the baseline it desires,

particularly because the exhibit states that Shavuo ceased drug use decades ago.  These

notations—an entire paragraph entitled "Substance History" with significant detail about his drug

and drinking habits—are potentially very prejudicial.  The position and heading of this paragraph of Exhibit D, as well as the level of detail therein, also differentiates it from the far less obvious, abridged notations included in Plaintiff's Exhibit 21.  (3/22/13 Barnea Decl., Ex. J, at 2.)  We conclude that the Government may offer Exhibit D only if it redacts the Substance History paragraph.

## CONCLUSION

For the reasons set forth above, the Government's second motion in limine is granted with respect to references to Shavuo's now-dismissed race and hostile work environment claims. That motion is also granted such that Dr. Carbone may not testify about the actual cause of Shavuo's termination.  The Government's motion is otherwise denied, as we will allow the use of Shavuo's Exhibit 13, once redacted, and Exhibit 15.

Shavuo's motion in limine is granted as to the Government's Exhibits E through J, M, and O.  The motion is denied with respect to the Government's Exhibits K and L.  Exhibits D and N may be offered at trial, once redacted per this order.  We reserve judgment on the admissibility of Exhibit P.

SO ORDERED:

Marvin E. Aspen
United States District Judge

Dated:        Chicago, Illinois
              April 5, 2013

-12-